ALBERT L. ROBERTS, Petitioner, v. HOMER A. FULLER, Judge, Respondent.

No. 40141.

FEBRUARY 11, 1930.

REHEARING DENIED SEPTEMBER 22, 1930.

**958**

*Kenneth H. Davenport,* for petitioner.

*George A. Johnston* and *O. M. Slaymaker,* for respondent.

FAVILLE, J.—I. Certain motions have been filed in this cause and ordered submitted with the case.

On September 3, 1929, the respondent judge entered an order in the district court of Union County, Iowa, punishing the petitioner for contempt for failing to pay an award of alimony which had been entered against petitioner in a divorce action. Application was made to a justice of this court for a writ of certiorari, and an order was entered under which said writ was issued from this court on September 9, 1929. By the terms of the order, the respondent was required to make return to this court on said writ on or before September 16, 1929. The respondent, in pursuance of said order, made a return in writing, which was duly filed in this court on September 16, 1929. On September 25, 1929, the petitioner filed herein a printed abstract of record, and on October 10, 1929, filed a motion to strike part of the return of respondent which had been previously filed in this court. Said motion seeks to strike from said return certain recitals therein. The return is in narrative form, and purports to contain a statement of the record of the proceedings in said matter. The opinion of the respondent in deciding the case appears to have been made of record. The motion to strike parts of said return is overruled.

II. On October 18, 1929, an amended abstract of record was filed, which purports to be an abstract of the pleadings, evidence, and exhibits in said proceeding. It purports to have  been filed by the respondent judge and by Laura Roberts, plaintiff in the divorce action. On January 10, 1930, the petitioner filed a motion to strike said amended abstract of record. The basis of this motion is that the record must be presented in this cause solely upon the return as made by the respondent. The "defendant's amended abstract" was not a copy of the return, but was an abstract of record in said proceeding, prepared in accordance with our rules respecting the preparation of abstracts. The original order of this court required that "the cause be submitted on printed abstracts and arguments, as nearly as may be according to the

rules for submission of civil cases." The amended abstract complied with the order of this court. An amendment to the original return of the respondent made the entire record and exhibits in said proceeding a part of the return in this court. The amended abstract is a proper abstract of the entire proceedings, as shown by the return and amendment thereto. Under the order of this court, it would have been a very proper thing for the petitioner to have prepared such an abstract in the first instance. The motion to strike said amended abstract is overruled.

III. On January 13, 1930, the respondent filed an additional return, from which it appears that the evidence in said contempt proceeding consisted of a large amount of both oral and  documentary evidence, and that the oral testimony was taken down at the time by the official court reporter, and the documentary evidence duly identified by him, and that, before the petitioner had been adjudged to be guilty of contempt in said proceeding, the shorthand notes of the official shorthand reporter, containing a full and complete report of said proceeding, together with all the exhibits, were duly certified by the respondent judge and said official shorthand reporter, and duly filed, and made a part of the record in said cause. It also appears from said amendment to said return that it was impossible to secure a transcript of said shorthand notes before the 16th day of September, 1929, the date when, under the order of this court, respondent was required to make return. It also appears from said amended return that the said shorthand notes had been duly extended into longhand, and duly certified, and filed in the district court of Union County on October 4, 1929. On January 15, 1930, the petitioner filed a motion to strike the said additional return of respondent and all of the record filed by respondent except the original return. The petitioner contends that the record fails to show that the evidence in the case was preserved, as required by the statute.

Section 12547, Code, 1927, is as follows:

"Where the action of the court is founded upon evidence given by others, such evidence must be in writing, and be filed and preserved."

960

As stated, the record affirmatively shows that the evidence was all taken down in shorthand by the official shorthand reporter, and all exhibits offered in evidence were identified by him, and that the shorthand notes, duly certified by the trial judge and the official shorthand reporter, together with said exhibits, were duly filed of record *prior* to the entry of the order adjudging the petitioner to be guilty in the contempt proceedings. It affirmatively appears that thereafter, the shorthand notes were duly extended into longhand, and the transcript thereof was certified by the said respondent and official shorthand reporter, and duly filed in said cause, and that all of this was done within a reasonable time. The precise question appears to have been decided by this court, contrary to petitioner's contention. *Lutz v. Aylesworth,* 66 Iowa 629; *Teasdale v. Anderson,* 196 Iowa 673; *Small v. Wakefield,* 84 Iowa 533; *Goetz v. Stutsman,* 73 Iowa 693; *Hatlestad v. Hardin County Dist. Court,* 137 Iowa 146; *Joyner v. Utterback,* 198 Iowa 215; *Hammer v. Utterback,* 202 Iowa 50. The case differs essentially from cases where the shorthand notes were not filed of record before the decision, as in *Gibson v. Hutchinson,* 148 Iowa 139, or *State ex rel. Aldrich v. District Court,* 133 Iowa 450, or where no transcript of the shorthand notes was ever made or filed, or where the return contains matters not made of record at the time of the commitment, as in *Crosby v. Clock,* 208 Iowa 472, and *Storie v. District Court,* 204 Iowa 847, or where an attempt was made to make an order of record by a *nunc pro tunc* order long after the judgment, as in *Sergio v. Utterback,* 202 Iowa 713. The petitioner's motion to strike the additional return and the amendment to abstract and the second amendment thereto is overruled.

IV. Under Code Section 12463, it was within the power of this court to order a further return to be made, if the original return to the writ was defective. The respondent files a motion for an order approving the filing of the amended return, setting out the transcript of the shorthand notes and the exhibits. While such a motion may not be required, it was not improper, in view of the peculiar record in this cause, and it is sustained.

V. Petitioner contends that the trial court was without authority to punish the petitioner for contempt of court for

failure to pay an award of alimony in a divorce case. Code Section 10482 is as follows:

"If any party against whom such decree [of alimony] has been entered, shall willfully disobey the same, or secrete his property, he may be cited and punished by the court for contempt."

The statute is itself a sufficient answer to petitioner's contention at this point. See, also, *Pewick v. Meyer*, 202 Iowa 134.

VI. Petitioner contends that, under said statute, he could only be punished for a *willful* disobedience of the decree awarding alimony, and that the record 'fails to show such willful disobedience. The petitioner's answer in the contempt proceeding was as follows:

"Comes now Albert L. Roberts and declares that he has the highest respect for this court, and denies that he has willfully or otherwise been guilty of any act constituting contempt of this court, and denies that he has intended by his conduct in any way whatsoever to exhibit any disrespect toward this court or its decree."

The trial court held:

"That the defendant is found guilty of willfully secreting his property for the purpose of avoiding paying of judgments rendered in this case."

We deem it unnecessary to set out the evidence supporting this finding, but content ourselves with the statement that an examination of the record abundantly satisfies us that said finding is correct, and that petitioner did not sustain the burden resting upon him to purge himself of contempt. See *Madalozzi v. Anderson*, 202 Iowa 104; *Laff v. Laff*, 161 Minn. 122 (200 N. W. 936).

VII. Petitioner contends that, if said Section 10482 be construed as authorizing the court to inflict the punishment of imprisonment for willful refusal to pay an award of alimony, then the statute is unconstitutional and void.

Constitution of Iowa, Article 1, Section 19, is as follows:

"No person shall be imprisoned for debt in any civil action,

on mesne or final process, unless in case of fraud; and no person shall be imprisoned for a militia fine in time of peace.''

Such a provision is embodied in the Bill of Rights in most, if not all, of the states of the Union.

The ultimate question at this point is whether or not an award of alimony is a ''debt,'' within the meaning of the above provision of the Constitution.

Thirty states and the District of Columbia have held that an award of alimony is not a ''debt,'' within the terms of such a constitutional provision, and that a party may be imprisoned for contempt of court in failing. to pay such an allowance, notwithstanding such constitutional provisions.

The courts of Missouri hold to the contrary. *Coughlin v. Ehlert,* 39 Mo. 285; *McMakin v. McMakin,* 68 Mo. App. 57; *In re Kinsolving,* 135 Mo. App. 631 (116 S. W. 1068) ; *Francis v. Francis,* 192 Mo. App. 710 (179 S. W. 975).

The cases supporting the majority rule are collected in an exhaustive note in 30 A. L. R. 130. To these should be added *State v. Francis,* 126 Ore. 253 (269 Pac. 878). In summarizing the authorities, the author of said note says:

''The courts have assigned various reasons for their holding that alimony is not a debt, within constitutional provisions prohibiting imprisonment for debt, as: that an allowance for alimony is merely a means of enforcing a duty which the husband owes to the public, as well as to the wife; that, in case the husband has property, the order is, in effect, a decree of distribution of property, requiring payment to the wife of her share of the estate; that the constitutional prohibition applies only to debts founded upon contracts, express or implied, or liabilities for torts; and that the imprisonment is, in reality, for contempt of court for failure of one able to do so to obey the order of the court, and not merely for failure to pay money. In this last aspect of the case, it has been held that contempt proceedings are essential.''

See, also, 19 Corpus Juris 301, Section 692; Ann. Cas. 1913E 1083.

We deem it unnecessary to review the authorities at length. We shall content ourselves by referring briefly to a few of the

cases, as being illustrative of the reasoning of the courts on the questions involved.

In *Ex Parte Joutsen*, 154 Cal. 540 (98 Pac. 391), the court said:

"It is said that an order in a contempt proceeding directing a party to be imprisoned until he has complied with the order requiring the payment of money is unlawful unless the party is able to make such payment. This may be conceded. We have no imprisonment for debt in this country. But, in the contempt proceeding under review, the court in terms found that the petitioner 'at all times has been and now is able to pay such sums and the whole thereof.' His offense for which he is being imprisoned is his failure to obey the order of the court when he has the ability to comply with it."

In *In re Application of Popejoy*, 26 Colo. 32 (55 Pac. 1083), the court said:

"* * * it is also urged by counsel for petitioner that, under Section 12, Article 2, of the Constitution, which prohibits imprisonment for debt, except in special cases, his imprisonment is unlawful. This constitutional provision against imprisonment for debt does not prohibit the punishment of a contempt in refusing to obey the lawful orders or decrees of a court; and in this case it appears that the petitioner is not imprisoned for a debt, but because of his refusal to obey the lawful order of the court with reference to the debt represented by the judgment in favor of his wife."

In *Lewis v. Lewis*, 80 Ga. 706 (6 S. E. 918), it is said:

"We are of the opinion that, when a court directs the payment of alimony by a husband to his wife, it is a duty he owes, not only to his wife, but to the public, to comply with the order; and, if he fails to perform that duty, we see no reason why the court cannot compel him to do so by an order of attachment directing his imprisonment in the event of his failure to comply with the order. Of course, this is a power which should be carefully and cautiously exercised; and, before granting the writ, the court ought to be satisfied that there is good ground for the attachment; and such appears to have been the case here. This is a case in which the old adage applies that, 'when a bird can

sing, and will not sing, he must be made to sing.' When it appeared to the court that this defendant had the money to comply with the decree, and that he failed to comply with it, we think the court had the right and the power to imprison him until he did comply with it."

In *Chase v. Ingalls,* 97 Mass. 524, the court said:

"The allowance of alimony, or the award to the wife of her own or a part of the husband's estate upon granting a divorce, is not a debt nor damages, in the sense of the statute."

In *Stonehill v. Stonehill,* 146 Ind. 445 (45 N. E. 600), the court said:

"Imprisonment for contempt of court in failing to pay money as ordered by the court is not imprisonment for debt, within the meaning of the Constitution."

In *Fritz v. Fritz,* 45 S. D. 392 (187 N. W. 719), the court said:

"It is contended by appellant that the attempted enforcement of the judgment by contempt proceedings is a violation of Section 15, Art. 6, of our Constitution, which provides that: 'No person shall be imprisoned for debt arising out of or founded upon contract.' This is not a debt arising out of or founded on contract, but out of an obligation, created by law, to support his wife and minor child."

In *Toth v. Toth,* 242 Mich. 23 (217 N. W. 913), the Supreme Court of Michigan said:

"A party in default in payment of alimony * * * may be imprisoned (3 Comp. Laws 1915, Section 11443 *et seq.*) ; and this is on the theory that a decree for alimony is not a debt, within the contemplation of Section 20, Art. 2, state Constitution, forbidding imprisonment for debt. 30 A. L. R. 130, note; *Bowman v. Wayne Circuit Judge,* 214 Mich. 518."

In *In re Application of Phillips,* 43 Nev. 368 (187 Pac. 311), the Supreme Court of Nevada said:

"As to the second contention, it may be observed that Section 14, Article 1, of our Constitution provides that 'there shall

be no imprisonment for debt,' except in certain specified cases. We think it safe in saying that it has been the uniform practice in this state to resort to contempt proceedings where a husband has failed to comply with the decree awarding alimony, when able to do so; and the overwhelming weight of authority is in support of the jurisdiction of the court to so proceed, it being the rule of law that alimony does not constitute a debt, within the meaning of that term as used in the Constitution inhibition against imprisonment for debt. A debt, in the sense used in the Constitution, alludes to an obligation growing out of a business transaction, and not to an obligation arising from the existence of the marital status, such as alimony; nor is alimony given as a judgment. It is a mere allowance for support and maintenance—a duty growing out of the marriage status; a duty which sound public policy sanctions, to compel one who is able so to do, possibly as the result of the co-operation (during coverture) of his former wife, to prevent such former wife from becoming a public charge or dependent upon the charity of relatives or friends. 'It has frequently been insisted,' says Mr. Nelson, 'that a decree for alimony is in fact a debt, and therefore payment should [not] be enforced by attachment for contempt where the Constitution prohibits imprisonment for debt. But it is uniformly held, and such is the [true] doctrine, that the decree for alimony is an order of the court to the husband, compelling him to support his wife by paying certain sums, and thus perform a public as well as a marital duty. Such decree is something more than an ordinary debt or judgment for money. It is a personal order to the husband, similar to an order of the court to one of the [its] officers or to his [an] attorney. The imprisonment is not alone to enforce the payment of money, but to punish the disobedience of the [a] party; and the order is not, therefore, a debt, within the meaning of the Constitution.' Nelson, Div. & Sep. Sec. 939.''

We might continue quotations from the authorities at great length. The rule is unquestionably well recognized, and the high standing of the many courts that have passed upon the question entitles their opinions to great and grave consideration.

It is contended that, by the opinion in *Schooley v. Schooley,* 184 Iowa 835, we are committed to the opposite view. That case arose under the exemption statute. A divorced husband against

whom a decree awarding alimony had been entered, remarried. Execution was issued on the judgment for alimony, and a debtor of the husband's, owing certain wages, was garnished. We thus stated the sole question in the case:

"May a divorced husband who has married again and thus becomes the head of a family avail himself of the exemption provided by Code Section 4011, against an execution issued upon a general judgment for alimony rendered in favor of his first wife?"

The statute under consideration provided that:

"The earnings of a debtor who is a resident of the state and the head of a family for his personal services * * * are exempt from liability for debt."

We held that the husband was a "debtor," within the purview of the exemption statute, and that his earnings were exempt from liability for the "debt" of the judgment for alimony in the divorce action. The decision was rendered by a divided court, four members favoring the majority opinion, and three joining in a dissent. We commented on the case in *Malone v. Moore,* 204 Iowa 625, 627.

In *Daniels v. Lindley,* 44 Iowa 567, we said:

"The claim of the wife for alimony is not in the nature of a debt; she is not the creditor of the husband; it is an equitable allowance made to her out of her husband's estate, upon dissolution of the marriage relation, and should be based upon the value of the estate, taking into consideration the debts of the husband."

It has been held by the Supreme Court of the United States, in *Audubon v. Shufeldt,* 181 U. S. 575 (45 L. Ed. 1009), that a judgment for alimony is not a dischargeable debt in bankruptcy. In said case the court said:

"Alimony does not arise from any business transaction, but from the relation of marriage. It is not founded on contract, express or implied, but on the natural and legal duty of the husband to support the wife. The general obligation to support is made specific by the decree of the court of appropriate jurisdiction. Generally speaking, alimony may be altered by that

court at any time, as the circumstances of the parties may require. The decree of a court of one state, indeed, for the present payment of a definite sum of money as alimony, is a record which is entitled to full faith and credit in another state, and may, therefore, be there enforced by suit. *Barber v. Barber* (1858), 21 How. 582; *Lynde v. Lynde* (1901), 181 U. S. 183. But its obligation in that respect does not affect its nature. In other respects, alimony cannot ordinarily be enforced by action at law, but only by application to the court which granted it, and subject to the discretion of that court. Permanent alimony is regarded rather as a portion of the husband's estate to which the wife is equitably entitled, than as strictly a debt; alimony from time to time may be regarded as a portion of his current income or earnings; and the considerations which affect either can be better weighed by the court having jurisdiction over the relation of husband and wife than by a court of a different jurisdiction.''

The word ''debt'' has a variety of meanings, and is applied in many different ways. See 2 Words and Phrases 1864.

· We are constrained to hold that the *Schooley* case is distinguishable from the instant case in that said case dealt with an exemption statute, which must be liberally construed in favor of one charged as a debtor. The *Schooley* case must be limited in its application to the narrow question of exemption involved therein. In the instant case we align ourselves with the great majority of the states of the Union, and hold that an award of alimony is not a ''debt,'' within the purview of the constitutional prohibition against imprisonment for debt.

VIII. Code Section 12543 is as follows:

''The punishment for contempts may be by fine or imprisonment, or both, but where not otherwise specially provided, courts of record are limited to a fine of $50, and an imprisonment not exceeding one day, and all other courts are limited to a fine of $10.''

Petitioner strenuously contends that, under the statute, he could, in no event, be punished to any greater extent than a fine of $50 and an imprisonment not exceeding one day.

Code Section 10482 provides for punishment by contempt proceedings of any party who willfully disobeys a decree in a

divorce action, or willfully secretes his property. In this case, the court specifically found that the petitioner  had willfully secreted his property for the purpose of avoiding the payment of the award of alimony in the divorce case. This finding is sustained by the record. The ability of the petitioner to perform the order of the court and pay the award of alimony is also apparent. The order of the court directed that petitioner be confined in the county jail until the alimony awarded was paid, unless sooner released by the order of said court or of this court. Was said order in excess of the jurisdiction and power of the court in a case of this character?

Code Section 12544 is as follows:

"If the contempt consists in an omission to perform an act which is yet in the power of the person to perform, he may be imprisoned until he performs it. In that case the act to be performed must be specified in the warrant of the commitment."

The order in this case was made under the express terms of this statute.

The petitioner can obtain his release by obeying the order of court and paying said alimony. Upon a proper showing of changed conditions, under the terms of the order the court could order his release at any time.

At this point we hold that the court had power to make the order that was made in the case, and was not limited to inflicting a punishment by fine of $50 and imprisonment for one day, under Section 12543.

As bearing on the question, see *Ex Parte Grace*, 12 Iowa 208; *Wise v. Chaney*, 67 Iowa 73; *Witmer v. District Court*, 155 Iowa 244.

Upon a careful consideration of the entire case, we reach the conclusion that the writ of certiorari should be dismissed, and the order of the respondent in all respects affirmed.

It is so ordered.—*Writ dismissed and order affirmed.*

MORLING, C. J., and EVANS, KINDIG, and GRIMM, JJ., concur.